### A. B. DEVOE, Appellant, v. LEVI SMELTZER, Road Supervisor, *et al.*, Appellees.

1. **Highways:** ACCEPTANCE BY PUBLIC: EVIDENCE. Where after the establishment of a highway the road was harrowed, and a culvert put in, by the direction of the road supervisor, and the road was traveled during a part of the year following until it was fenced up by the owner of the abutting property, and it remained so fenced for more than ten years, *held*, that there was an acceptance of the road by the public.

2. ———: VACATION: APPOINTMENT OF SUCCESSIVE COMMISSIONERS. Where, upon petition, a commissioner was appointed by the county auditor to report upon the advisability of vacating a highway, and he reported against such vacation, and thereupon certain persons, other than those who signed the first petition, presented to the auditor a paper requesting him "to appoint another commissioner to view and report" on the expediency of vacating said highway as before petitioned, *held*, that said paper was not a new petition, and that as, under the provisions of section 927 of the Code, no further proceedings could be had under said petition after the adverse report of said commissioner, a vacation of said road upon the report of a second commissioner, appointed in pursuance of the request in the paper above referred to, was invalid. Whether a vacation upon a second original petition in such case would be valid, *quære.*

3. ———: ADVERSE POSSESSION: EVIDENCE.  Title by adverse possession cannot be claimed in a public highway where during the running of the statute of limitations the party in possession has admitted the existence of the highway, and the rights of the public therein, by promising to remove fences and open the road.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

MONDAY, OCTOBER 17, 1892.

ACTION to, enjoin the defendants from opening, working, or using certain land for a public highway. There was a decree dismissing the plaintiff's bill, and he appeals.

The plaintiff claims to have been the absolute owner of the northwest fractional quarter of the northwest quarter of section 1, township 72, range 31, except seven acres, in Union county, Iowa, since July 4, 1872, and to have held adverse possession of said land ever since said time; and avers that said premises have been fenced and used for farming purposes by him ever since May 20, 1876. That in 1890, and while said land was so fenced and used, the defendants tore down the fences inclosing the same on the north line thereof, and opened it up, claiming it was a public highway. That the defendants claim that a public highway was established along said north line of said premises in 1875, but the plaintiff claims that on July 5, 1877, the same was legally vacated; avers that said land had never been used as a highway nor worked, and that the plaintiff ever since he owned it had been using it for farming purposes; that the plaintiff has owned the land on both sides of said vacated road since July 4, 1872; that said land has never been recognized as a highway since July 5, 1877. Other necessary allegations are made for an injunction against the defendants, and one was issued restraining them from interfering with said premises, and from

opening or working same as a public highway. The defendants, answering the plaintiff's petition, deny that said highway was vacated; deny that the plaintiff occupied or used said land adversely to the rights of the public; and deny that a petition to vacate said land as a public highway was filed on April 25, 1877, or that the necessary steps were ever taken to vacate said highway. They aver that said land was duly laid out for a public highway, and the same was duly established thereon, accepted, improved and used by the public, and still exists as such, and that the proceedings for vacation were void. They aver that the plaintiff had promised from to time to remove the obstructions which he had placed in said highway. They admit that the defendants are the supervisor and marshal, respectively, and that they removed from said highway obstructions placed thereon by the plaintiff, and deny all other allegations in the petition. The plaintiff in his reply denies that said land was laid out as a highway; that one was established, accepted, improved, used by the public, and still exists; and denies that he was remonstrated with against obstructing the highway.—*Affirmed.*

*McDill & Sullivans*, for appellant.

*Thomas L. Maxwell* and *James G. Bull*, for appellees.

KINNE, J.—I. The plaintiff, while admitting the highway was established, insists that it was never opened and used by the public; that, though the right of such use by the public existed, it was not used, and hence such right became extinguished by the vacation of the road. It is said in *State v. Shinkle*, 40 Iowa, 131: "Something more than the mere right to use land for the purpose of travel is necessary to constitute a high-

1. HIGHWAYS: acceptance by public: evidence.

way.  It must be traveled, or at least capable of use in
that  way,  to  make  it  a highway."  See *Davies v.
Huebner*, 45 Iowa, 574.   The evidence is uncontradicted
that  in 1876, by  direction  of  the  road  supervisor, a
culvert was put in this highway and the road harrowed;
that it was traveled by the public that fall and winter,
and until it was fenced up.   Several  witnesses  testify
to this same work and to the use of the road.   So far
as appears from the evidence no work, except this, was
ever  done on this highway.   That this land was used
as a public highway the year after it was established,
and  up to the time it  was  closed  by  fences  by  the
plaintiff, is clear.   We do not know that any rule can
be established as to just what amount of use of an
established highway will amount to an acceptance by
the public.   But the fact that a wooden culvert was
put in under the direction of the officer having author-
ity to work the public highway, so that the same could
be traveled, and the fact that it was used more or less
that  year,  and  until  its  use  was  prevented  by  the
plaintiff, ought certainly to be held sufficient to show
acceptance by the public.

II.  But it is said that the road was vacated, and
hence the public lost all right to use it as a highway.

2. —: vacation: appointment of successive commission-ers.

It appears that on March 12, 1877, T.
Wharton and others petitioned for the
vacation of this road.   A bond for costs
was given,  a commissioner appointed,
who, after being sworn, and having examined said road,
reported against said proposed vacation.   On April 25,
1877, N. M. Blanchard and others filed with the auditor
of Union county a paper reading as follows:   "To the
auditor of Union county, Iowa:   We, the undersigned,
would respectfully ask you to appoint another com-
missioner to view and report on the expediency of vacat-
ing a portion of the Peterson road, as petitioned for by
T. Wharton and others."   Whereupon the auditor

appointed another commissioner, who reported in favor of vacating the road. A notice was published as required by law, except that in describing the location of the road it was said to commence at the southwest corner of the southwest quarter of the southwest quarter of section "33," township 73, range 31, etc., when it should have read "36". The appellees contend that, inasmuch as the commissioner first appointed reported against the vacation, that was the end of the matter.

Our statute, after providing for the appointment of a commissioner and prescribing his duties, says: "After a general examination, if he shall not be in favor of establishing the proposed highway, he will so report, and no further proceedings shall be had thereon." Code 1873, section 927. This is applicable to proceedings to vacate, as well as to establish highways. In *Cook v. Trigg*, 52 Iowa, 710, this court, in construing this section, said: "The meaning of the section is that, if the report shall be adverse to the proposed location or change, no further proceedings shall be had in the matter. The petition cannot be made the basis of the appointment of a new commissioner. A report adverse to the matter proposed in the petition ends all further proceedings upon that petition. If the auditor may appoint a second commissioner, he may appoint *ad libitum* at the suggestion of an interested party, until a favorable report is procured." In *Morgan v. Miller*, 59 Iowa, 482, where the commissioner reported against the establishment of a highway, and the board of supervisors proceeded to establish it regardless of the report, the court said: "A report against the road was made a final determination. The application was no longer pending." It is clear, then, that in this case the proceedings, so far at least as the petition of Wharton and others was concerned, were at an end when the first commissioner reported against the vacation of the highway. Neither

the auditor nor the board of supervisors had any further jurisdiction in the matter; and hence the attempted vacation of the highway upon the report of a commissioner afterwards appointed, and acting under the same petition, would be of no effect. Indirectly, at least, the appellant concedes the force and effect of the cases above cited by claiming that the last commissioner's report was based upon a new petition. "Any person desiring the establishment, vacation or alteration of a highway shall file in the auditor's office of the proper county a petition in substance as follows: To the board of supervisors of ——— county: The undersigned ask that a highway commencing at ———, and running thence ———, and terminating at ———, be established, vacated or altered (as the case may be)." Code 1873, section 922. The paper filed April 25, 1877, is not in the form prescribed by the statute, nor need it follow its precise language. *McCollister v. Shuey*, 24 Iowa, 362; *State v. Pitman*, 38 Iowa, 252; *Stevens v. Board*, 41 Iowa, 341; *State v. Barlow*, 61 Iowa, 572. But it seems to us it was not a new petition at all. It was a mere request that the auditor appoint "another commissioner." etc. In other words, its very phraseology, taken in connection with the fact that one commissioner had already been appointed in the case, precludes the idea that it is meant to be an original petition for the vacation of that part of the road referred to. It being, then, an application for the appointment of another commissioner to act upon the original petition, it was not within the power of either the auditor or board to grant the request. There was then no legal vacation of the highway. We must not be understood as holding that more than one petition for vacation cannot be entertained. That is a question which does not arise in this case. What we do hold is that when the auditor has appointed a commissioner who reports adversely to the vacation of a road, that is

an end to the proceedings so far as that petition is concerned.

III.   The plaintiff claims that he has held the land in controversy adversely for more than ten years prior to the assertion by the defendants of any

3. ——: adverse possession: evidence.

right to it.   There can be no question that the plaintiff has been in possession of the land in controversy for more than ten years, and that during all of that time he has used the same for farming purposes, and paid taxes thereon; that he fenced it in 1877.   But the question is, under all the facts disclosed in evidence, has his possession been adverse.   The road as originally established was six miles long, extending the whole length of the line between Douglass and Spaulding townships.   It appears that it was sought to vacate the west half mile of this highway on the south line of the southwest quarter of section 36, but the land now in controversy is only the west half of this half mile.   It also appears that the plaintiff himself platted the land south of and immediately adjoining the east half of the road which he claimed to have vacated, making the north line of the lots the same as the south line of the road.   Indeed, the plaintiff now recognizes this part of the road as a public highway.   In 1877, when the plaintiff fenced the highway in controversy, parties protested to him against so doing, claiming that it was a public highway.   He promised to remove the fences in the fall.   Between five and ten years prior to the commencement of this suit, the exact date does not appear, the plaintiff again promised to open the highway.   It seems also that, about 1882, suit was begun against the plaintiff to compel him to open the highway, but, for some reason which does not appear in the record, it was abandoned.   It is incumbent on the plaintiff to establish the adverse holding claimed by him.   He has not done so.   From all the testimony, it appears to us the plain-

tiff has, within the ten years prior to the beginning of this action, admitted that the property in controversy was a public highway, as he had done prior to that time.

It is not necessary that we discuss the further legal questions raised. There is no room for controversy as to the law applicable to the case, but we hold that the facts as shown by this record do not bring the case within the law as claimed by the plaintiff. The decision of the court below was right, and is AFFIRMED.